The next case scheduled for oral argument this morning is No. 21-1036, Rupp v. City of Buffalo. I believe Mr. Lee is appearing by Zoom. Is that correct? That's correct, Your Honor. Very good. Thank you. All right, Mr. Davenport. Yes, that's correct. Please proceed. Good morning, Your Honors. It's my great honor to present this case to this honorable court today. Generally speaking, this is a case that concerns an incident involving a pedestrian in the City of Buffalo who was detained and issued a noise ordinance violation. Not because the volume of his voice was offensive, but because he appended the word asshole to a warning that was necessitated by the defendant, a City of Buffalo police officer, who was driving at night with his headlights off, nearly striking two pedestrians in front of a popular restaurant in downtown Buffalo, and then continuing to drive afterwards with his headlights off. This case raises two key issues. The first issue is whether a speaker needs to know that he is speaking to a police officer in order for his speech to enjoy First Amendment protection. The second question is whether an officer can have probable cause or arguable probable cause to issue a plaintiff a noise ordinance violation after that officer created an emergency situation through his own conduct and the plaintiff issued an objectively warranted and justified warning. Turning to the first issue. Let me just interrupt for a second to say the citation itself says defendant did yell, turn your lights on, and so on with an expletive. So there is a noise component to what Mr. Rupp did, isn't there? There is, Your Honor, that is correct. But we do not believe that the noise itself would have violated the statute. And we believe that what actually happened was the police officer was offended by Mr. Rupp's choice of words that he used to deliver his warning to the officer. And the first question that the district court answered in the negative that we believe that this court should reverse and review is whether Mr. Rupp's speech was protected under the First Amendment. And we believe that it was for three reasons. The first is that all speech generally enjoys protection under the First Amendment unless it falls within a categorical exception to speech that's protected. Some examples of unprotected speech include defamation, obscenity, broadcast indecency, fighting words, incitement, true threats. Those are categorical exceptions to what is generally protected under the First Amendment, which is all speech. We do not believe that Mr. Rupp's statement to the officer, turn on your headlights, asshole, falls within any of these categorical exceptions. Nonetheless, noise ordinance have been upheld as consistent with the First Amendment. I mean, cities can limit people from yelling persistently in the street no matter what their words are, can't they? Certainly, Your Honor. And we're not disputing that here today. We believe that the statute itself is constitutionally permissible. But we don't believe that Mr. Rupp violated the statute. And turning to that second issue of whether there was probable cause or arguable probable cause for detaining Mr. Rupp. Can I just ask you, actually, before you move to that point, with regard to the idea of whether or not this is protected speech, if the standard is that the speech also actually needs to be a matter of public concern, how does that fall within that category here where clearly Mr. Rupp is upset and he's commenting on this interaction that's happening? But is it a matter of public concern? We do believe so, Your Honor. We believe that there are numerous facts that point to the fact that this is a matter of public concern rather than an issue that's solely related to Mr. Rupp. The first one being that he issued this warning from a public sidewalk in front of a popular restaurant. Under First Amendment jurisprudence, speech that is in a public forum typically enjoys heightened protection under the First Amendment. We want to protect individuals who are making statements and who are speaking in a public forum. That's how ideas are spread. The second that we believe points to the fact that this is on a matter of public concern is the fact that the officer was driving with his headlights off. And then he nearly hits two pedestrians, flicks his headlights on, and then continues to drive with his headlights off. Mr. Rupp is issuing a warning not just to the police officer to turn on his headlights because, you know, he continued to drive with his headlights off, but also others who are in the vicinity that there is a car that is driving with its headlights off. Mr. Rupp and his wife, they did observe that car, but only as it was fast approaching them. And then two pedestrians had walked out into the street unwittingly, almost walking into, you know, their demise, a serious accident. So Mr. Rupp and his wife and the two pedestrians were already aware of the presence of this car driving with its lights out when Mr. Rupp yelled. Is that correct? That is correct, Your Honor. Does the record show whether there was anyone else in the vicinity to hear this warning on a matter of public concern? No, Your Honor. There is no evidence, and we believe that that's actually beneficial for the plaintiff here because one of the things that the officer was required to show was that somebody was actually annoyed or disturbed by Mr. Rupp's speech. So the two pedestrians who had— Why is that so? Why isn't it just a reasonable person, kind of objective standard? Maybe there were people in, you know, their offices or homes nearby or even in the restaurant or what have you. Why isn't it an objective standard? Certainly. So we're looking at the plain language of the statute. And so the statute itself outlaws yelling, shouting, or hooting at any time or place so as to annoy or disturb the quiet comfort and repose of a reasonable person of normal sensitivities. So we believe that the key language here is the so as to, indicating that someone actually has to be annoyed by the speech itself. So why can't it mean just in a manner such as would disturb a person were they to be walking by and hearing it? It certainly could, but in looking at other aspects of the statute here, specifically 293.5 or 293.6, excuse me, one of the ways that someone can show that there is an unreasonable noise that's been made under the statute is you could actually have the complainant stand and measure the sound. And the statute itself requires that that person take the measurement of the sound from where they're complaining. So, for instance, if you have two neighbors, you can't go over to your neighbor's property where the unreasonable noise is being made. You have to stand at your property and you have to measure the sound itself. So there's other aspects- Excuse me, that was kind of in the context of leaf blowers or someone playing a boom box outside for an extended period of time. But does the presence of 293.5 and 6 preclude the issuance of a citation for making a loud one-time disturbance that no one has their decibel meter nearby to measure how loud it was? So we believe that the answer is not necessarily, but it helps to interpret what the language of the statute, what the statute is intending to convey. So in looking at the statute in its entirety, typically where speech is being outlawed is in front of nursing homes, residential areas, places where somebody who is a reasonable person of normal sensitivities could be disturbed by yelling, shouting, or hooting. The other aspect of the statute that we're looking to interpret and extrapolate from is the fact that oftentimes there needs to be- And I see that my time just expired. Please take a minute. Other aspects of the statute require that there be repeated sounds. And in this case, this was a single utterance over a span of a few seconds, five words, and the officer barely even heard what was said. And that's demonstrated by the fact that he couldn't recall five minutes later what Mr. Rupp had said. Inside of the restaurant, the officer didn't go in to go see if anybody had been disturbed. He merely used himself as the person who was disturbed and then worked backwards to issue that noise ordinance violation. There's no other evidence of anyone being disturbed by what Mr. Rupp said. So your position is that the ordinance requires a showing that someone actually was disturbed in order to issue a citation? That's correct. Because of the so as to language. Other parts of the statute do demonstrate that somebody needs to actually be disturbed by the speech in order for there to be a violation under this statute. All right. Thank you. You've reserved two minutes for rebuttal. Thank you. We'll hear from Mr. Lee. Good morning, Mr. Lee. Good morning, Your Honors. David Lee, Assistant Corporation Counsel for the defendants. There are two main issues in this case, Your Honors. The first issue is whether. Pause for a second, if you would. We were hearing you having a little feedback. Okay, please proceed. The first issue, Your Honors, is whether plaintiff's speech was protected speech. Constitutionally protected speech, as I've always understood it, has some type of social significance to it or political significance to it. It does affect a matter of public concern. Now, if we look at the facts here. Mr. Lee, do you think that there could be a context where a warning is protected speech? And more specifically, in this case, I think in the brief, there's some discussion that the expletive takes this out of a warning category. If the same comment was made without the expletive and it's construed as a warning, could that fall into the category of a matter of public concern and thus protected speech? If it truly was a warning, Your Honor, yes, it could. But there was no one else in the area other than the two pedestrians who Officer McAllister flashed his brights at and said, okay, you can proceed now. And then Mr. Rupp and his wife were already safely in the parking lot. But if he was going to proceed driving at night with his lights off, that could endanger someone down the block. Isn't that right? Why does what you just described take it out of the category of speaking on a matter of public concern? Well, I think, Your Honor, it is because of that insulting word that was used. And that shows that Mr. Rupp was not speaking about a matter of public concern. But the main emphasis of the message was your lights are off, turn your lights on. And that he used a word that isn't always used in polite conversation to make an emphatic point. I don't see why that negates the warning aspect of his speech. Because it wasn't meant to be a warning, Your Honor, I guess is what my response would be. If it was meant to be a warning, there would be no need to call Officer McAllister the insulting word. You would just say turn your lights on. But if it wasn't meant to be a warning, why not just use the last word? Well, I suppose because, I mean, there was a dual purpose. It was truly meant to be a warning, though, I think. You'd have to have someone in the vicinity, I think. And I understand Your Honor's point about, well, it is unsafe to drive at night without your lights on. But I guess I just don't see the point of the other word. I think that Mr. Rupp probably was upset. Maybe it was intended to be so, but he sort of lost his temper and said what he said. I mean, I just don't think this turns into a free speech issue. So if Officer McAllister had been on the sidewalk and observed Mr. Rupp yell the same words at a driver who was not a police officer but who was driving with his lights out, do you think the same arrest would have been warranted and protected? Well, yes, Your Honor, I do. If he violated the noise ordinance, which we think there's evidence here that there is at least probable cause that the noise ordinance was violated. Do you think the arrest would have occurred? Do I think the arrest would have occurred? I think that it would have been objectively reasonable for Officer McAllister to make the arrest, yes. Based on, we know that there was yelling, and we know that what the noise ordinance says that if there's yelling and could annoy a person of reasonable sensitivities, then there would be probable cause to arrest that person for violating the noise ordinance. But isn't part of what we look at in these noise ordinances, I mean, they're not absolute. And the requirement of so as to annoy a reasonable person factors into circumstances. For instance, if someone is hit by a car on the street and they scream out in pain loudly, someone nearby could be annoyed by that. But to say that the statute would apply a reasonable person in that context is not going to be annoyed by noise of that kind that's occurring. I mean, I don't know if that's a good example, but something along those lines. Would that person be subject to this noise ordinance because it's a loud noise? Don't we have to consider what's going on? I think you do have to take into account the circumstances, Your Honor. Absolutely. I mean, and that's why I don't think that plaintiff's argument about how someone actually has to be annoyed is valid because you can imagine a situation where let's say you have someone screaming obscenities loudly on a residential street. And this is the middle of the night. You know, just because no one living on that street comes down actually says I'm annoyed by this. It doesn't mean the noise ordinance isn't violated. Right. But the flip side, I guess I'm asking about if, in fact, in the example I gave that clearly someone screaming in the street and not only is an actual person annoyed by that, but it is reasonable to think people would be annoyed by that. In the context of someone being injured or some other circumstance, does this apply there? Well, in your example, I don't think that it would. If someone was obviously seriously injured and screaming in pain, they would not be arrested for violating the noise ordinance. But that's not the situation. Right. But what's the reason why? What's the reason why in that context that the noise ordinance shouldn't apply beyond just someone exercising discretion might not choose to cite them? Or do you feel like they could be, in fact, be cited in that context that it just wouldn't happen? Yeah, I think it's a discretionary thing. I mean, if you look at, I suppose, the letter of the noise could that person be charged? I suppose they could. But who would ever do that? No reasonable officer would ever charge that person with violating the noise ordinance. Unlike here, we have a situation where it was just a personal matter for Mr. Rupp. He was upset that he and his wife almost allegedly got run over by McAllister. And that's why he said what he said. And then two other people as well. And the light still didn't go on. Yeah, correct. Your Your Honor, the lights were not on. That's that's not in dispute. You know, he flashed the lights, though, at the pedestrian so that pedestrians could safely cross the street. And then the lights went went dark again. So why wasn't a warning called for, including someone that was adequately loud for the officer who is in his vehicle with the windows rolled up and the motor on to hear? I think, Your Honor, that a warning was justified. It's just it's but you have to look to the speaker's, I think, intent. What what what did Mr. Rupp intend to convey? And that's that's the Texas versus Johnson case. I think we cited, Your Honor, in my brief about how here. Now, that's a conduct case. That's not speech. That's about conduct. Uppering the American flag. But I don't see any distinction to be drawn here. The court in that case did hold that it's important. We have to look at what message to the speaker actually intend to convey. And I think if you look at that insulting word at the end, it was just it was personal in nature. Suppose instead of asshole, he'd said moron. Yeah, same same. I don't. Same result. Your Honor. Same result. He'd still be arrested. Well, I think it would be objectively reasonable to to place not to give Mr. Rupp a violation of the order. The noise ordinance. Yes, there will be probable cause or at least argue. So and what if what if the windows had been down and police officers stopped and he didn't yell, but he just said, turn your lights on, moron. Well, then he wouldn't then there would be no violation of the noise or because there wouldn't be yelling. But you were suggesting we focus on his intent and being insulting and that that was pivotal. Well, that's that's I think that's for the First Amendment piece of it, Judge. So I think there's the two issues is what is Mr. Rupp's statement, protected speech. And that's where I think we have to look towards what what was his what message do you really intend to convey? So that's issue one. But then there's a separate issue about whether there was probable cause to cite Mr. Rupp for a violation of the noise ordinance. And there you look at, well, what are the elements of the noise ordinance? And one of those elements is yelling. Yelling five words. Yeah. But yes, your honor, it's at night and it's in the vicinity of a busy restaurant. It's around three people that Mr. Rupp did not know. I think it was reasonable for us to conclude that somebody could be annoyed by that. It's a commercial district, right? I'm not. I'm not. I'm sorry. I don't entirely understand what you mean. It was near a restaurant and there weren't residences nearby as far as the record shows. I think that's there are residents nearby, just because I'm familiar with the area, but I don't know, like, in that immediate vicinity. No, I think it's basically just the restaurant, the restaurant, the parking area. Yeah. Yeah, exactly. All right. Thank you. Thank you very much. Thank you. We'll hear from Mr. Davenport. You have two minutes of rebuttal. Thank you, your honors. I just want to respond to two points that my adversary made. The first point is that he says that we need to look at the intent of what Mr. Rupp said in order to determine whether or not it's protected under the First Amendment. He cites the Texas v. Johnson case. And as we talked about in our brief, that's pertaining to whether an expression, an action that's taken is protected under the First Amendment. And Mr. Lee doesn't see why there's a distinction between the two. But just to highlight, if I were to stop my foot because I trip while I'm walking, I'm not intending to convey a message. But if I stop my foot while looking at somebody after I've been in a heated exchange with somebody, I may be trying to convey a message that I'm ready to attack somebody. So that is why you need to look at the difference between speech and expression. Express. Not every action has First Amendment protection because you're not trying to express something by that action. Whereas by speech, your speech, you are intending to convey a message. And that raises another issue with these district courts finding that an individual needs to know that they are speaking to a police officer in order for that speech to enjoy First Amendment protection. That's not recognized anywhere in any First Amendment jurisprudence whatsoever. Each case that the district court reviewed and that the defendants have cited and that we have cited, the court looks to whether you directed your speech at an individual, whether you directed that speech at a police officer. It doesn't ask whether you intended to direct that speech at a police officer. And putting a knowledge requirement behind it is dangerous precedent to set because then, you know, where does it end? Do you have to direct your speech at a police officer and also intend for it to pertain to his police activities? Or is it just enough to know that you're speaking to a police officer? And then on the last point- Can you explain one thing to me? If the only offensive part of this is the last word, asshole. Explain to me what difference it makes whether the hearer is a police officer or not. We don't think that it does make a difference. And the reason why- I don't understand the interplay between those two facets of this. And I think, you know, we're equally stumped on this point, too, because we don't think that it makes a difference. There was a warning that was called for and there was a warning that was delivered. Whether or not the word or an unsavory word was attached to the end of it and that it was a warning that was intentionally conveyed loudly, so that way its listener would understand and understand that there's an emergency situation that's present. We don't want to curtail these warnings because then we would have a society that's afraid to issue warnings in similar circumstances. We want society to freely issue warnings in these circumstances, even if they contain a word that's unsavory. Thank you very much, Mr. Davenport. Thank you. Thank you for your arguments. We'll reserve decision. Thank you.